IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL GRADY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **Case No. 20-1206-JPG** |
| | ) | |
| EUGENE J. ARAGONA, and | ) | |
| JOHN J. FRANKE, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court are two motions for summary judgment. Defendant John Franke, Jail Administrator at the Alton Law Enforcement Center ("Jail"), seeks summary judgment in Doc. 44. Plaintiff filed a response. (Doc. 52). Defendant Dr. Eugene Aragona, a physician for the Jail, also filed a Motion for Summary Judgment (Doc. 46). Plaintiff responded (Doc. 51) and Aragona replied at Doc. 53. As explained below, both motions will be granted.

### BACKGROUND

Plaintiff Michael Grady filed this *pro se* civil rights lawsuit[1] while he was a federal pretrial detainee at the Jail.[2] He claims that Defendants failed to provide him adequate medical care for a number of his chronic health problems, maintained conditions that exposed him to infection with COVID-19, and denied him adequate dental care. (Doc. 1-1, pp. 112-120; Doc. 1-2, pp. 1-9; Doc. 10, pp. 2-3). The Complaint alleges that Plaintiff, age 66, suffers from pulmonary emphysema and hypertension. Over several years at various times, he complained of headaches, muscle aches,

---

[1] Plaintiff invoked *Bivens v. Six Unknown Agents*, 403 U.S.B 388 (1971) in his Complaint, but the Court considers it as a suit under 28 U.S.C. § 1983 against state or local defendants. (Doc. 1; Doc. 10, pp. 4-5).
[2] Plaintiff was confined at the Jail since March 2017, awaiting trial in the Eastern District of Missouri, *United States v. Velasquez, et al.*, Case No. 15-cr-00404-HEA-29. (Doc. 1-2, p. 2). He was convicted in April 2021 in that case. (Doc. 46-1, p. 12).

nausea, fatigue, difficulty breathing, bloody stools, dizziness, allergies, vision problems, and a lost

filling and related dental infection, and claims that Dr. Aragona ignored these complaints and

modified or eliminated his prescription treatments. (Doc. 1-1, pp. 114-15; Doc. 10, p. 2). Plaintiff's

health conditions placed him at high risk of complications if he contracted COVID-19. Defendant

Franke allowed Plaintiff to come into contact with staff members and/or other detainees who tested

positive for the virus and failed to take steps to reduce his risk of infection. Plaintiff's requests to

be tested for COVID-19 were ignored or denied.

Following threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was

allowed to proceed on three claims:

> **Count 1:** Defendants failed to provide Plaintiff with adequate medical care for his hypertension, pulmonary emphysema, headaches, muscle aches, nausea, fatigue, breathing difficulties, bloody stool, dizziness, allergies, and vision problems, in violation of his rights under the Fourteenth Amendment.

> **Count 2:** Defendants subjected Plaintiff to unconstitutional conditions of confinement, including the denial of medical care, at the Jail by exposing him to individuals who tested positive for COVID-19, ignoring his symptoms of possible COVID-19, refusing his requests for COVID-19 testing, and taking no steps to minimize his risk of infection, in violation of his rights under the Fourteenth Amendment.

> **Count 3:** Defendants have denied Plaintiff adequate dental care for a lost filling and dental infection since January 2019, in violation of his rights under the Fourteenth Amendment.

(Doc. 10, p. 3).

Soon after discovery commenced, the Court recruited counsel for Plaintiff. (Docs. 26, 31).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary

judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). The moving party has the burden of establishing that no material facts are genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence*, 391 F.3d at 841.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

## DISCUSSION

Plaintiff's claims are governed by the Fourteenth Amendment Due Process Clause, as he was a pretrial detainee at all relevant times. *See Kingsley v. Hendrickson*, 576 U.S. 389, 395-96 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The Court applies a two-part analysis to Fourteenth Amendment claims related to inadequate medical care and/or conditions of confinement. *See Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *McCann v. Ogle*

3

*Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). First, the Court examines whether the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 353). The second question is whether the defendant's conduct was objectively reasonable based on the totality of circumstances faced by the defendant. *Id*.

### A. Defendant Franke (Doc. 44)

Jail Administrator Franke contends that he acted appropriately during Plaintiff's confinement, did not ignore any of Plaintiff's medical concerns, and reasonably facilitated medical care for Plaintiff. (Doc. 44; Doc. 45). Plaintiff was housed in the Jail from March 2017 until approximately May 2021. (Doc. 45-1, pp. 17-18). Franke asserts that Dr. Aragona, who is paid by the U.S. Marshals Service ("USMS") to provide medical care for federal prisoners at the Jail, personally visited detainees each week until the COVID-19 outbreak changed this practice. (Doc. 45, p. 2). Approval was required from the USMS to order medication, tests, or a specialist referral. The Jail forwarded such requests to the USMS, but Franke was not empowered to approve or disapprove them. Franke never denied Plaintiff's medical appointments or requests and worked with Aragona to obtain necessary care for prisoners. *Id.*

When the COVID-19 pandemic arose, Franke instituted policies to protect detainees and staff. (Doc. 45, pp. 2-3; Doc. 45-3). He asserts that Plaintiff never developed COVID symptoms, never tested positive, and twice refused to get the COVID vaccine.[3] (Doc. 45, p. 2). There was a period when outside visitors, including Dr. Aragona, were not permitted inside the Jail, but any prisoner needing medical care could be taken to the hospital. Eventually the Jail set up weekly

---

[3] Plaintiff explained at his deposition that he declined to get the COVID-19 vaccine because he had not been screened by a doctor and was unsure how the vaccine might interact with his prescription medications. (Doc. 46-1, pp.24-25).

telephonic doctor visits for all prisoners and Plaintiff was never denied the opportunity to speak with Dr. Aragona or to get any testing. (Doc. 45, pp. 2-3).

Plaintiff notes that the crux of his claims against Franke relate to the unsafe conditions of confinement and inadequate measures to mitigate the danger of COVID-19 infection. (Doc. 52, p. 2). Franke does not dispute that Plaintiff had serious medical conditions including breathing problems and high blood pressure, which predated the COVID pandemic. (Doc. 45; Doc. 45-1, pp. 23-24; Doc. 52, pp. 2-3). These conditions as well as Plaintiff's age are factors known to increase the risk of serious illness from COVID-19. Plaintiff argues that the purported safety measures Franke employed were inadequate to protect him from infection, in that a detainee known to be positive for COVID-19 was placed in the area where Plaintiff was housed, detainees were allowed to move about freely without masks during recreational time, and no special precautions were taken for vulnerable inmates. *Id.* The masks provided to prisoners were of lower quality than those given to Jail staff. In Plaintiff's deposition, he testified that he made several written requests to Franke to be tested for COVID-19, but Franke never responded. (Doc. 46-1, pp. 33-34). Additionally, Plaintiff denies that he had unfettered access to consult Dr. Aragona, noting that Franke testified that no telephonic or in-person visits with the physician were allowed for an unspecified period of time early in the pandemic. (Doc. 52, p. 4).

Focusing on Count 2, Plaintiff and Franke dispute the sufficiency of Franke's safety measures at the Jail to protect him from the risk of COVID infection. Plaintiff asserts that he was exposed to unmasked fellow detainees including one who had tested positive for the virus, Franke took no extra precautions even though he had knowledge of Plaintiff's age and medical conditions that heightened his risk, and Franke ignored Plaintiff's requests to be tested for the virus. The Court is cognizant that conditions which expose a prisoner to a contagious disease can support a

claim for unconstitutional conditions of confinement. *See Helling v. McKinney*, 509 U.S. 25, 33-34 (1993); *Powers v. Snyder*, 484 F.3d 929, 931 (7th Cir. 2007); *Barnes v. Briley,* 420 F.3d 673, 675 (7th Cir. 2005). However, it is undisputed that Plaintiff never contracted COVID-19 while he was housed at the Jail, even though the conditions might have put him at risk. Plaintiff does not assert that he ever developed new symptoms to suggest he contracted COVID, such as a fever or loss of taste or smell. There is no evidence to indicate Plaintiff ever became ill with COVID at the Jail.[4] In light of the absence of harm to Plaintiff, the disagreements between Plaintiff and Franke on the adequacy of Franke's COVID precautions do not rise to the level of disputed issues of *material* fact that present a genuine issue for trial. For this reason, Franke's motion for summary judgment will be granted on Count 2.

As to Count 1, Franke admitted in his deposition that there was a period of time at the start of the pandemic where Dr. Aragona was not permitted to visit inmates and telephone visits had not yet started. (Doc. 45-1, pp. 19-21; Doc. 52, p. 3). Plaintiff argues that this amounted to a decision to "willingly…block medical treatment" during the lockdown. (Doc. 52, pp. 4). However, Plaintiff does not point to any evidence that Franke's lockdown resulted in a denial of Plaintiff's access to medical care or to consult with Aragona during that unspecified period between the start of the lockdown and the implementation of telephone consultations with the doctor.[5] Based on the record developed to date, the Court cannot identify facts that would support a verdict in Plaintiff's favor on the claim that Franke failed to provide him with adequate medical care for the conditions and symptoms listed in Count 1. Franke's motion for summary judgment will also be granted for

---

[4] As mentioned below, Dr. Aragona's motion for summary judgment notes that Plaintiff had two dental visits (December 15, 2020, and February 4, 2021), where he was screened for COVID symptoms and indicated he had none. (Doc. 46, p. 11).
[5] The Court notes that Plaintiff admitted there was no time that Franke refused to allow him to talk by phone with Dr. Aragona, and that since Dr. Aragona's return to in-person visits to the Jail in 2021, he had never made a request to see Aragona that was refused. (Doc. 46-1, pp. 23, 42).

6

Count 1.

Count 3 claims that Plaintiff was denied adequate dental care for a lost filling and infection since January 2019. Franke testified that Aragona was responsible for reviewing Plaintiff's dental issues, and Plaintiff did speak to Aragona about his filling and infection. (Doc. 45-1, p. 22, 28). Franke states he did not hinder Plaintiff's access to Aragona for this issue and was not aware of what subsequent treatment Plaintiff may have had. (Doc. 45-1, p. 28). Plaintiff does not contradict Franke's assertions or set forth any evidence to support his claim in Count 3 that Franke was responsible for the alleged denial of dental care. Accordingly, summary judgment will be granted for Franke as to Count 3 as well.

### B. Defendant Dr. Aragona (Doc. 46)

Aragona was Plaintiff's doctor at the Jail since the beginning of his incarceration in March 2017. As of August 2021, he was no longer treating Jail inmates because a contract was not agreed on. (Doc. 46-3, p.17). Aragona's motion discusses each of Plaintiff's medical issues in turn and argues that Plaintiff simply disagrees with his clinical judgment as to Plaintiff's medical issues, whether treatment was needed, and what treatment was appropriate. Aragona notes that Plaintiff's various complaints did not result in any injury to him, and the motion asserts Aragona properly addressed each condition that was brought to his attention. (Doc. 46, pp. 6-10).

Starting with Count 1 for inadequate medical care, Aragona states Plaintiff's high blood pressure has always been well controlled with prescribed amlodipine, and Plaintiff agreed with each of Aragona's suggested changes in his prescriptions which they discussed during the regular in-person visits before the pandemic. (Doc. 46, pp. 3, 7). When the Jail was shut down during the pandemic, Aragona was unable to check Plaintiff's vital signs, but there was no indication Plaintiff suffered any complications from his high blood pressure.

In response to Plaintiff's complaint of shortness of breath on April 22, 2020, Aragona ordered a chest x-ray on June 17, 2020. Aragona testified that during the times he saw Plaintiff in person, his respiratory rate, pulse oximetry, vital signs, and speech never indicated shortness of breath. He never showed signs of wheezing or other problems when Aragona listened to his lungs. (Doc. 46, pp. 4, 7-8). Aragona ordered the x-ray to placate Plaintiff's concerns. While the result noted the presence of pulmonary emphysema, Aragona concluded based on the x-ray that Plaintiff was not suffering from any condition requiring treatment. (Doc. 46-3, pp. 32-33).

Also on June 17, 2020, Plaintiff began complaining of blood in his stool. That day, Aragona ordered two tests (lactoferrin and Insure). As Plaintiff's symptom continued, Aragona ordered three more lab tests (CBC, PSA, and CMP) which came back normal, and a colonoscopy, which the USMS did not approve. (Doc. 46, pp. 4, 8-9). Completion of the Insure test was delayed because Jail personnel mishandled the stool sample; Aragona believed the results were negative. (Doc. 46-3, p. 26). By May 2021, Plaintiff reported to Aragona that he was no longer seeing blood in his stool. (Doc. 46, pp. 4, 9).

Because Plaintiff complained of vision problems, Aragona referred him to an ophthalmologist, who determined that Plaintiff needed eyeglasses – and the lack of glasses was causing his headaches and dizziness. (Doc. 46, p. 5, 9-10). However, the USMS refused to provide the glasses.

Aragona maintains that Plaintiff never complained to him of fatigue, muscle aches, nausea, or allergies, therefore he could not treat those complaints. (Doc. 46, p. 10). Further, Plaintiff reported he could do his regular workouts without becoming fatigued.

Plaintiff responds that contrary to Aragona's arguments, there are "plenty" of disputed facts to preclude summary judgment. (Doc. 51, p. 2). He argues that Aragona had no actual medical

evidence to conclude that Plaintiff was not suffering from breathing problems, and he never examined Plaintiff in person during the pandemic. (Doc. 51, p. 3).

Plaintiff's general assertions do not convince the Court that genuine issues of material fact exist that would support a jury verdict in his favor on Count 1 with respect to Dr. Aragona. The doctor continued treating Plaintiff's hypertension with medication and Plaintiff points to no evidence that he experienced harmful symptoms during the time frame at issue here. Dr. Aragona ordered a chest x-ray in response to Plaintiff's claim of shortness of breath. It showed no acute condition in need of treatment. Dr. Aragona found no clinical signs to support Plaintiff's claim of breathing problems during the time they were able to meet in person. He concluded based on the x-ray, Plaintiff's description of his ability to work out without becoming fatigued or short of breath, and Plaintiff's verbal presentation on the phone, that Plaintiff was not suffering shortness of breath. Plaintiff clearly disagrees with that conclusion, but such disagreement does not rise to the level of a dispute of material fact. Nor does it support a constitutional claim for improper medical treatment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Likewise, Dr. Aragona promptly ordered tests to address Plaintiff's complaint of bloody stools and followed up with additional testing. A colonoscopy was not approved by the USMS but the other test results indicated no serious condition and the problem eventually ceased. While Plaintiff was dissatisfied, he has not countered the motion with specific facts to call into question the appropriateness of Aragona's response to his reported symptoms.

As to Plaintiff's vision problems, Aragona referred him to an eye doctor, who concluded Plaintiff needed glasses to relieve his headaches, dizziness, and spots in his vision. There is no genuine factual dispute that Aragona could have or should have taken any further steps to address

9

this issue as it is undisputed that the USMS refused to provide Plaintiff with glasses.

Plaintiff makes much of Dr. Aragona's deposition testimony that Plaintiff might have had a Morton's neuroma in December 2019, a condition involving a nerve in the foot that could be painful. (Doc. 51, pp. 2-3; Doc. 46-3, pp. 37-42). Aragona's clinical exam showed the nerve was transmitting normally. He stated MRI and EMG tests would have been necessary to diagnose the condition; he suggested tests but they were never approved. Plaintiff contends that the doctor should have advocated for those tests to be given. Aragona filed a reply to this issue, pointing out that Plaintiff never raised the matter in his original Complaint and never sought to amend his pleading to add the Morton's neuroma issue, thus he has waived this claim. (Doc. 53). The Court agrees. Plaintiff did not include this issue in his Complaint and cannot use his summary judgment response as a vehicle to amend the Complaint. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). The only issue involving Plaintiff's foot mentioned in the Complaint was a possible toe infection. Aragona treated that problem (which he concluded was athlete's foot) with medication, a referral to a dermatologist, and follow-up treatment recommended by that specialist; the condition was largely relieved. (Doc. 46-3, pp. 33-36). Even if the Morton's neuroma matter was not waived, Plaintiff has not shown a factual dispute as to these issues that could support a verdict in his favor.

To summarize, Plaintiff has not demonstrated the existence of a disputed material factual issue on the question of whether Dr. Aragona provided him with adequate medical care for the issues enumerated in Count 1. Aragona's motion for summary judgment will be granted as to Count 1.

Count 2 encompasses Plaintiff's risk of contracting COVID-19 because of conditions at the Jail and the lack of testing. Aragona notes that Plaintiff never contracted COVID-19, and on

two dental visits (December 15, 2020, and February 4, 2021), he answered the COVID symptom screening questions with negative responses. (Doc. 46, p. 11).

Plaintiff states that the Jail conditions placed him at heightened risk of contracting COVID and takes issue with Aragona's opinion that detainees were more protected against the virus than people on the outside. (Doc. 51, p. 3). Plaintiff repeats that he was never tested for COVID-19 and claims Aragona should have been aware of the need for Plaintiff to be tested and did not explain why he never ordered a test. (Doc. 51, pp. 3-4). However, Aragona explained that he had no control over whether Plaintiff could obtain a COVID-19 test because those protocols were governed by the Jail administration. (Doc. 46, p. 11). Notably, Plaintiff never alleges that he developed symptoms of COVID-19 infection that might have prompted Aragona to order a COVID test, aside from his claimed shortness of breath (as discussed above, Dr. Aragona did not substantiate this complaint).

Plaintiff has not demonstrated a genuine issue of material fact as to Aragona's failure to protect him from the Jail conditions that allegedly exposed Plaintiff to COVID infection. Aragona's summary judgment motion will also be granted as to Count 2.

Count 3 focuses on Plaintiff's claim of inadequate dental care. Plaintiff testified that he told Dr. Aragona about his lost filling starting in January 2019, and believed the doctor made a recommendation that he see a dentist. (Doc. 46-1, pp. 19-20). Plaintiff stated he had not yet seen a dentist by February or March 2019 but eventually did. (Doc. 46-1, p. 20). Aragona states he referred Plaintiff to a dentist when Plaintiff lost his filling. The dentist put in a temporary filling, which fell out and was replaced again. (Doc. 46, pp. 5, 11-12). On May 27, 2020, Aragona prescribed antibiotics when Plaintiff reported a possible dental infection. By January 2021, Plaintiff reported his tooth was better.

Plaintiff's response to the motion offers no counter-argument to Aragona's points. (Doc. 51).  He sets forth no facts to contradict Aragona's assertion that he made a prompt dental referral upon learning of Plaintiff's lost filling and that he treated Plaintiff's infection with antibiotics. The Court cannot discern any material factual dispute on the issue of whether Aragona properly handled Plaintiff's dental complaints. Aragona is entitled to summary judgment on Count 3 as well.

### DISPOSITION

**IT IS HEREBY ORDERED** that Defendant Franke's Motion for Summary Judgment (Doc. 44) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Aragona's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: 3/22/2022**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**